UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PAMELA WHITTLE and<br>JAMES WHITTLE,<br><br>*Plaintiffs,*<br><br>vs.<br><br>TOWN OF COVENTRY, by and through<br>Its Treasurer, Warren West; et al.,<br><br>*Defendants.* | C.A. No. 06-148 S |

**DEFENDANTS' PROPOSED JURY INSTRUCTIONS**

In addition to the Court's general Jury Instructions, defendants, the Town of Coventry, Coventry Police Department, and Gregory Guillette, hereby propose the following jury instructions:

1. **COUNTS II & IV — FOURTH AMENDMENT CLAIM AGAINST GUILLETTE**

1.1. The Fourth Amendment grants citizens the right to be free from unreasonable search and seizure. The Courts have found that the use of an unreasonable amount of force to effectuate a lawful seizure amounts to a violation of the Fourth Amendment. *Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43, 51 (1st Cir. 2005).*

1.2. Of course, some type of physical coercion is typical during an arrest so that "[n]ot every push or shove, is actionable." *Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).* Rather, the touchstone of an excessive force claim is whether the amount of force employed is reasonable in light of the circumstances and criteria I will outline for you.

1.3. In order to prove excessive force the plaintiff must prove by a preponderance of the evidence: (1) a significant injury; (2) resulting directly and only from the use of force that was clearly excessive to the need, and (3) the excessiveness of the force was objectively unreasonable. *Reese v. Anderson, 926 F.2d 494, 500 (5th Cir. 1991).*

1.4. Because it is a Fourth Amendment claim, excessive force claims are thus evaluated under the Fourth Amendment's objective reasonableness standard that permits force to be used to the extent an officer reasonably, even if mistakenly, believe is necessary. *Whitfield v. Melendez-Rivera, 431 F.3d 1, 7 (1st Cir. 2005).*

1.5. "Though the reasonableness test under the Fourth Amendment ''is not capable of precise definition or mechanical application,'' . . . [the Supreme Court] prescribes three criteria for evaluating the objective reasonableness of the force used: (1) "the severity of the crime at issue;" (2) "whether the suspect poses an immediate threat to the safety of the officers or others;" and (3) "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Alexis v. McDonald's Restaurants, 67 F.3d 341, 352-353 (1st Cir. 1995) quoting Graham v. Connor, 490 U.S. 386, 396 (1989).*

1.6. Objective reasonableness is judged from the perspective of a reasonable officer in the same circumstances and not from the perspective of 20/20 hindsight. *Pena-Borrero v. Estremeda, 365 F.3d 7, 12 (1st Cir. 2004).* When judging reasonableness, it must be factored in that "police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and

rapidly evolving, about the amount of force that is necessary in a particular situation." *Graham, 490 U.S. at 396*.

1.7. In addition, this standard allows for evidence of what is known to the police officer on the scene at the time the force is applied. The knowledge of the police officer forms part of the "facts and circumstances attendant to the decision to use the particular degree of force." *See Senra v. Cunningham, 9 F.3d 168 (1st Cir. 1993)*.

1.8. Of course, "[w]hen police officers face what is essentially a fluid situation, they are entitled to graduate their response to meet the demands of the circumstances confronting them." *Smith v. Ball State Univ., 295 F.3d 763, 770 (7th Cir. 2002) (finding no constitutional violation where police ordered driver out of car, who refused to do so thus the officers were justified in using force to remove him).*

2. **COUNT I — ASSAULT AND BATTERY AGAINST OFFICER GUILLETTE**

2.1. To render a defendant liable in an assault action under Rhode Island law, the plaintiff must prove that she was placed in apprehension of imminent harmful or offensive contact. *Restatement (Second) of Torts, § 24*.

2.2. This is a subjective standard that requires a plaintiff to be aware of the imminent contact and actually suffer apprehension at the possibility of such contact. *Id. at § 27*. Plaintiff need not establish, however, that she was frightened by the defendant's actions only that she suffered apprehension as a result of the actions.

2.3. The apprehension required for an assault is of imminent or immediate bodily harm. Words alone, therefore, are not sufficient to make a defendant liable for assault. If, however, the words, together with other acts or circumstances, put the

plaintiff in apprehension of imminent harmful or offensive contact, then a defendant may be liable for assault. *Id. at § 31*.

2.4. In order to prove a cause of action for battery, plaintiff must establish the same intent necessary to prove assault, that is: defendant intended to commit a harmful or offensive touching or to create apprehension of the same. *Id. at § 18(1)(a)*.

2.5. Unlike a claim for assault, however, in a claim for battery, plaintiff must also show that there has been a harmful or offensive touching on the part of defendant. *Id. at § 18(1)(b)*. Although the plaintiff need not be aware that a touching has occurred in order to recover for battery, the plaintiff must establish that she did not consent to the touching.

2.6. Hostile intent toward the plaintiff or an intent to cause him injury or embarrassment, however, is not necessary in order to establish a claim for battery. Intent to bring about un-permitted contact is sufficient.

2.7. A well-recognized "permitted" contact occurs when a police officer is performing his duties by taking an individual into custody. As I previously instructed you, a police officer can use reasonable amount of force to subdue an individual even if the officer is not acting in self-defense. *Sheehan v. West, 27 R.I. 84 (1905)*. Such privileged contact relieves the officer from liability for assault and battery.

## 3. QUALIFIED IMMUNITY

3.1. I will now instruct you on the doctrine of qualified immunity. The doctrine of qualified immunity applies even if you find that the defendants violated either plaintiff's constitutional rights or infringed upon their state law rights.

3.2. Under the doctrine of qualified immunity, government officials, such as police officers, performing discretionary functions generally are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).*

3.3. The purpose behind granting officials such immunity is to allow the officers to perform their duties and act in areas where clearly established rights are not implicated "with independence and without fear of consequence." *Id. at 819.*

3.4. In determining whether the officers are entitled to immunity, their actions must be viewed from an objectively reasonable standpoint. The decisive question becomes whether another police officer, standing in the shoes of this defendant, would have concluded that his actions violated a clearly established statutory or constitutional right. *See Ricci v. Urso, 974 F.2d 5, 7 (1st Cir. 1992).*

3.5. A "reasonable, although mistaken, conclusion about the lawfulness of one's conduct does not subject a government official to personal liability." *Cookish v. Powell, 945 F.2d 441, 443 (1st Cir. 1991).*

3.6. That is because "[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting' all but the plainly incompetent or those who knowingly violate the law.'" *Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992) quoting Hunter v. Bryant, 502 U.S. 224, 229 (1991).*

3.7. Qualified immunity may exist even though in hindsight you might determine that the action of the official violated the constitution. *Berthiaume v. Caron, 142 F.3d 12, 15 (1st Cir. 1998) citing Harlow, 457 U.S. at 814-15.* Thus, even if it should

ultimately be determined that the defendants in fact violated the plaintiff's rights, if it was objectively reasonable for the defendants to conclude that their actions were lawful, they are entitled to qualified immunity.

3.8. If, after considering the scope of discretion and responsibility generally given to police officers in the performance of their duties, and after considering all of the surrounding circumstances of the case as they would have reasonably appeared at the time of the incident, you find from a preponderance of the evidence that plaintiff has proved either (1) that the officers were *plainly incompetent* or that (2) they *knowingly* violated the law, you must find for the plaintiff. If, however, you find that the officers had a reasonable belief that their actions did not violate the rights of the plaintiff, then you cannot find them liable even if the plaintiff's rights were in fact violated as a result of the officers objectively reasonable action.

## 4. Counts III & IV — Negligent Training/Supervision in Violation of Civil Rights against Town

4.1. Plaintiff has also brought a claim for violation of her civil rights against the Town of Coventry for its alleged failure to train and supervise Officer Guillette. I first caution you that plaintiff's failure to train and supervise cannot be premised on the conclusion that the individual officers violated plaintiff's constitutional right or were negligent in the actions. Rather, this is a separate claim with its own elements that must be met by plaintiff.

4.2. The burden on plaintiff to demonstrate the Town's failure to train or supervise amounted to a constitutional deprivation is high. In fact, the United States Supreme Court held that there are only "limited circumstances in which an

allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton v. Harris*, *489 U.S. 378, 387 (1989).*

4.3. In order to maintain a claim against a municipality under *§ 1983* for failure to train or supervise, the plaintiff must demonstrate by a preponderance of the evidence that (1) individual police officers violated plaintiff's constitutional rights; (2) that this violation was due to a lack of training by municipal policy makers; (3) who are "deliberately indifferent" to the need for the training and 4) it was this lack of training that caused the constitutional violation. *City of Canton, 489 U.S. at 387.*

4.4. As evident from what I just instructed you, if you found that Officer Guillette did not violate plaintiff's constitutional right then you must enter judgment in favor of the Town on the failure to train and supervise claim. *City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point"); Evans v. Avery, 100 F.3d 1033, 1039-40 (1st Cir. 1996)(where individual officers did violate plaintiff's constitutional rights in the course of a high speed pursuit, the City likewise could not be held liable for the alleged failure to monitor police pursuits and through its failure to supervise police officers involved in such pursuits).*

4.5. If however, you have found that Officer Guillette used excessive force in apprehending plaintiff you must then determine whether that violation was due to a lack of training by the Town.

4.6. The third element requires you to find by a preponderance of the evidence that the defendants were deliberately indifferent in their failure to train. In making this determination, I caution you that bad facts or a single outrageous event is insufficient. Rather, the Plaintiff must show an actual policy of inadequate training, where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, 489 U.S. at 390*. Thus, for liability to stem from failure to train, Plaintiff must also demonstrate that a municipality *deliberately* chose an inadequate training program. *Id. at 389*.

4.7. The "deliberate indifference" standard has been broken down into three elements:

4.8. that a policymaker of the municipality knows to a moral certainty that its employees will confront a given situation;

4.9. that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and

4.10. that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights. *Smith v. Town of E. Haven, 2005 U.S. Dist. LEXIS 4544 (D. Conn. 2005) citing Nicholson v. Scoppetta, 344 F.3d 154, 166 (2d Cir. 2003) (citations omitted).*

4.11. Thus, absent any showing of previous harm separate from the instant claim arising from this training policy, or any evidence of deliberation on the police department's part, there will be no basis to support the conclusion that a

municipality actually chose a policy with deliberate indifference toward the constitutional rights of individuals. *K v. City of S. Portland, 407 F. Supp. 2d 290, 297 (D. Me. 2006).*

4.12. Finally, as with all constitutional claims, plaintiff can only succeed on its failure to train claim under *§ 1983* if that failure is the cause or the "moving force" behind the underlying constitutional deprivation. *See City of Canton, 489 U.S. at 388*. A governmental entity "'is only liable when it can be fairly said that the city itself is the wrongdoer." *Collins v. City of Harker Heights, 503 U.S. 115, 122 (U.S. 1992).* The Supreme Court has employed an "actual causation" standard in claims against a municipality for the negligent training and supervision of government officials under *42 U.S.C. § 1983*. *City of Canton, 489 U.S. at 390*. That is, in order to maintain a *§ 1983* claim against a municipality, plaintiff must demonstrate that the claimed deficiency "actually causes injury." *Id.* The Supreme Court has described this burden as requiring a showing that "the identified deficiency in a city's training program . . . [is] closely related to the ultimate injury. . . Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *Id. at 391*.

## 5. COUNT V - LOSS OF CONSORTIUM R.I. GEN. LAWS § 9-1-41 (TOWN OF COVENTRY AND GUILLETTE)

5.1. James Whittle, Pamela Whittle's husband has also brought a claim under § 9-1-41 of R.I. General Laws for loss of consortium. A loss of consortium claim is a derivative action brought by a spouse for loss of society and companionship that

may or may not have been caused by tortious injury suffered by an impaired spouse, in this case Pamela Whittle. *R.I. GEN. LAWS § 9-1-41*.

5.2. As a derivative action, it is dependant of the success of Pamela Whittle's claim. That is, if you find that Pamela Whittle has not proven her cause of action, then you must likewise return a verdict in favor of the defendants on James Whittle's claim. *Sama v. Cardi Corp., 569 A.2d 432 (R.I. 1990); Olshansky v. Rehrig Int'l, 872 A.2d 282, 291 (R.I. 2005) quoting Soares v. Ann & Hope of Rhode Island, Inc., 637 A.2d 339, 353 (R.I. 1994) (under § 9-1-41, as at common law, "a loss of consortium claim 'depends on the success of the underlying tort claim.')*.

5.3. Section 9-1-41 allows a spouse to recover for loss of affection, society, and companionship as well as services that results from the injury suffered by the injured spouse at the hands of the defendants. *Amaral v. Cabral, 494 A.2d 94, 96 (R.I. 1985)*.

5.4. It is the "affection, companionship and society natural to" the particular party's relationship that you must base your decision on *Fritz v. May Dep't Stores Co., 866 F. Supp. 66, 70 (D.R.I. 1994)*. That means that simply because a party has been tortiously injured does not automatically mean that a spouse is entitled to loss of consortium damages. Rather, the spouse "necessarily first must prove that he or she actually did suffer a loss of consortium" by demonstrating a change in "the affection, companionship and society *natural* to" the party's relationship. *Conant v. Zerva, 793 A.2d 1042, 1044 (R.I. 2002) citing Jameson v. Hawthorne, 635 A.2d 1167, 1172-73 (R.I. 1994)*.

## 6. WITNESS TESTIMONY

6.1. The interest or lack of interest of any witness in the outcome of this case, the bias or prejudice of a witness, if there be any, the age, the appearance, the manner in which the witness gives testimony on the stand, the opportunity that the witness had to observe the facts concerning which he/she testified, the probability or improbability of the witness' testimony when viewed in light of all the other evidence in the case, all may be taken into consideration in determining the weight, if any, you will give the witnesses testimony. Consider also any relation each witness may have to either side of this case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness's testimony is either supported or contradicted by other evidence in this case.

6.2. Where the testimony of one witness on a specific item of evidence is contradicted directly by the testimony of another witness and there is no other witness testifying on such item, you are not required to therefore consider the evidence evenly balanced or the item not proved. In such a situation, you may determine which of the two witnesses you believe on the basis of all the surrounding facts and circumstances proved at trial, and, you may believe one witness rather than the other if you believe the facts and circumstances warrant it.

6.3. "It is [well settled] that an expert, no matter how good his credentials, is not permitted to speculate." *Christiansen v. City of Tulsa, 332 F.3d 1270, 1283 (2003).*

**7. BURDEN OF PROOF**

7.1. This is a civil case. The plaintiff therefore has the burden of proving his case by a preponderance of the evidence. That means that the plaintiff has to produce evidence which, considered in the light of all the facts, leads you to believe that what plaintiff claims is more likely true than not. The ultimate burden of proof in this case, on all issues, rests with plaintiff. *Douglas v. Sylvia, 55 R.I. 260.*

**8. DAMAGES**

8.1. If you should find for the plaintiff and against the defendant, then you must decide the issue of damages.

8.2. Plaintiff cannot seek to have damages awarded on the basis of the importance of the rights violated. The plaintiff must prove actual damages. *Memphis Cmty. Sch. Dist. v. Statura, 106 S.Ct. 2537 (1987).*

8.3. Plaintiff should be compensated for all damages proximately resulting from the negligence of the defendant. Plaintiff's damages must be supported by competent evidence. Mere conjecture or speculation cannot be relied upon to establish such causal connection. Rather, plaintiffs must provide competent proof of the connection between the negligent action and the injury received. *Evans v. Liguori, 374 A.2d 774, 777 (R.I.1977).*

8.4. The claim for loss of consortium is a separate and distinct claim that belongs to Plaintiff James Whittle alone. It is not part of the claims of the Plaintiff Pamela Whittle. Thus, Pamela Whittle's claims are not to be considered as part of the damages to be awarded, if any, to her allegedly injured spouse.

8.5. In arriving at the amount of damages, if any, which you will award for loss of consortium, you should consider what is fair compensation for the loss of the ordinary services and society and comfort and companionship, both physical and emotional, that spouses provide to each other.

8.6. Your award must derive from the evidence which has been introduced to show just how much James Whittle lost in terms of the society, companionship and comfort from the Plaintiff, and how much he/she will continue to lose in the future. You may consider all of the circumstances as shown by the evidence including the nature of the relationship between these spouses prior to the injury as well as after, and the prospects for their relationships as a result of the injuries of the Plaintiff, Pamela Whittle.

Defendants,
Town of Coventry, Coventry Police
Department, and Gregory Guillette,
By their attorney,

*/s/ Marc DeSisto*

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
(401) 272-4442
(401) 272-9937 fax
marc@desistolaw.com

CERTIFICATION

I hereby certify that the within document has been electronically filed with the Court on this 1st day of May, 2007, is available for viewing and downloading from the ECF system, and that the counsel of record listed below will receive notice via the ECF system:

James P. Howe, Esq.
jph@jamesphowe.com

*/s/ Marc DeSisto*

Marc DeSisto